# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

NATOSHA L. FINLEY,

    Plaintiff,

    v.

MIAMI UNIVERSITY,

    Defendant.

Case Nos. 1:19-cv-984

JUDGE DOUGLAS R. COLE

## OPINION AND ORDER

This cause comes before the Court on Defendant Miami University's ("Miami") Motion to Dismiss (Doc. 16) Plaintiff Natosha Finley's Second Amended Complaint ("SAC") (Doc. 15) for failure to state a claim. For the reasons discussed more fully below, the Court **GRANTS** Miami's Motion (Doc. 16) and accordingly **DISMISSES** Finley's Second Amended Complaint (Doc. 15) in its entirety **WITH PREJUDICE**.

## BACKGROUND

Finley filed her original Complaint (Doc. 1) in this matter on November 20, 2019. There, she asserted discrimination claims under Title VII. Miami moved to dismiss (Doc. 4) the original Complaint. Rather than defend that Complaint, Finley filed a First Amended Complaint ("FAC") (Doc. 8), as Fed. R. Civ. P. 15 entitled her to do. In the FAC, she restated her Title VII claims and added corresponding state law claims. Miami likewise moved to dismiss (Doc. 9) Finley's FAC. The Court granted Miami's motion and accordingly dismissed Finley's FAC on November 30, 2020. (*See* Nov. 30, 2020, Op. and Order ("Op."), Doc. 14). In doing so, however, the Court granted Finley one more opportunity to re-plead her allegations as to her Title

VII claims to fix the pleading defects that the Court had identified, if she could.[1] And Finley has now availed herself of that opportunity. Given that history, the Court's Opinion dismissing Finley's FAC is, of course, highly relevant to the Court's Opinion here analyzing Finley's latest version of her allegations. But, before recounting that Opinion, a refresher on the pertinent facts is in order, drawn (mostly) from the SAC (Doc. 15).

### A. Factual Background.[2]

Finley, an African American woman, began working at Miami University, a state university in Oxford, Ohio, in 2009. (SAC, Doc. 15, #98–99[3]). Miami hired Finley, then 38 years old, through a diversity program called the "Heanon Wilkins Faculty Fellows." (*Id.* at #99). Finley applied for the fellowship primarily because Miami, unlike many other institutions, had an 850 Megahertz nuclear-magnetic-resonance spectrometer—a rare piece of equipment Finley hoped to use for her structural biology research. (*Id.* at #99–100).

After Finley started at Miami, however, things started to go downhill. Finley alleges that Miami, despite knowing the spectrometer's vital importance to Finley's work, discriminatorily limited her access to the machine. (*Id.* at #100). Finley further

---

[1] The Court found that she could not pursue her state-law claims in federal court due to the Eleventh Amendment. Thus, the Court dismissed those claims without prejudice to her right to refile them in state court.

[2] For purposes of a Rule 12 motion to dismiss, the Court accepts as true the factual allegations in the Complaint—or, in this case, the Second Amended Complaint. Thus, the Court reports these "facts" as alleged in the Second Amended Complaint, but with the disclaimer that these facts are not yet established and may never be.

[3] Refers to PAGEID #.

2

alleges that Miami made the spectrometer available to other researchers within and without the University, apparently on the basis that those researchers "generated revenue." (*Id.* at #100–01).

Miami's persistent failure to allow Finley sufficient access to the spectrometer allegedly negatively impacted her ability to write scholarly articles, a metric Miami considered in making promotion and tenure decisions. (*Id.* at #100). In addition to hindering her ability to write articles, she alleges that Miami required more of her than it did of other academics. She points specifically to Drs. Bollman and Ballish, two white coworkers Finley claims were similarly situated in other respects. (*Id.*). Finley alleges that Miami required Dr. Bollman to lead-author only three publications to receive a favorable tenure recommendation, and required Dr. Ballish to lead-author only one. (*Id.*). In contrast, Finley alleges Miami required of her five such publications to receive a favorable recommendation. (*Id.*). She further alleges that Miami discounted co-authored publications when considering her tenure bid, but counted co-authored publications in its reviews of Drs. Bollman and Ballish. (*Id.*).

According to Finley, Miami denied her tenure bid on November 4, 2016, citing the "spurious" basis that she had not written enough articles. (*Id.*). However, Miami gave Finley a one-year extension of time to remedy that deficiency. (*Id.* at #101). She contends that she did write another article during this year, but that Miami "failed to use or recognize" that article in its second tenure decision, which occurred on December 11, 2017. (*Id.*). Despite that this decision took place after an "extension," Finley characterizes it only as "preliminary." (*Id.*).

3

In keeping with this characterization, Finley goes on to describe the procedures she undertook "before the denial" of tenure became, in her view, "final." (*Id.*). First, Finley went before the Faculty Rights and Responsibilities ("R&R") Committee, which was a right "separate and distinct" from the right to a tenure decision in the first instance. (*See id.*). That Committee, rather than reviewing the denial decision "on the merits," assessed whether any procedural errors occurred and whether the matter should be returned to the tenure committee. (*Id.*). According to Finley, the R&R Committee that heard her case consisted of mainly "white men, white women, and only one African American female, who did not attend any hearings." (*Id.* at #102). The Committee, in a decision entered June 11, 2018, found no error in the decision to deny Finley's tenure, despite having in the past found error in the denial of white candidates' tenure.[4] (*Id.* at #101–02).

Second, Finley pursued her right to be free from discrimination in the tenure process by filing a charge with Miami's Office of Equity and Equal Opportunity. (*See id.* at #102). This Office independently investigated Finley's tenure denial and "erroneous[ly]" determined that the denial was not discriminatory. (*Id.*). Although the Office noted concerns about the Heanon Wilkins Fellowship program generally, it "failed to link the shortcomings to Plaintiff's [tenure] denial." (*Id.*). Finley allegedly later discovered, though, that a Miami employee had "changed" her "appeals

---

[4] The SAC indicates that this decision occurred on June 11, 2017, rather than 2018, but this appears to be a mistake. (Pl. Resp. in Opp'n to Def. Mot. to Dismiss the SAC, Doc. 17, #114 n.2).

4

documents." (*Id.*). She contends that these alterations led to the Office's determination of no discrimination. (*Id.*).

Third, Finley "filed an appeal" with the Vice President of Diversity and Inclusion, Ron Scott, on December 6, 2018. (*Id.*). She pursued this action only after being told she could not appeal to the "Miami Board," despite that the President's Office had informed her such an appeal was the appropriate next step. (*Id.* at #102–03). Scott denied Finley's appeal on February 1, 2019. (*Id.* at #103).

Having apparently exhausted her remedies within the Miami system, Finley filed a charge at the United States Equal Employment Opportunity Commission Office ("EEOC") on April 8, 2019. (*Id.*). The EEOC, "unable to conclude" whether a Title VII violation had occurred, issued Finley a right-to-sue letter on September 6, 2019, which gave Finley 90 days from that date to file her claims against Miami in federal or state court. (Compl. Ex. B., Doc. 1-2, #11).

**B.  Procedural Background.**

As noted above, Finley originally sued only under Title VII, alleging discrimination based on race, gender, and national origin. But, in response to Miami's Motion to Dismiss (Doc. 4), she filed a new complaint, adding new state-law discrimination claims arising under Ohio Revised Code Chapter 4112. (FAC, Doc. 8, #49–51).

Miami moved to dismiss the FAC. (*See* Mot. to Dismiss FAC, Doc. 9). Miami argued that Finley's Title VII claims were time barred because she failed to file her EEOC charge within 300 days of the date of the allegedly unlawful employment

5

practice, which Miami identified as the tenure denial that occurred on December 11, 2017. (*Id.* at #56). Miami also argued that Finley's state-law discrimination claims failed because of Miami's sovereign immunity under the Eleventh Amendment. (*Id.* at #56–57).

Finley opposed Miami's motion on both counts. (Resp. in Opp'n to Def. Mot. to Dismiss, Doc. 10). She first argued that the EEOC charge was timely filed because the "discriminatory adverse action[,] denial of tenure[,] was not fully completed until the required review by the Committee on Faculty Rights and Responsibilities" on June 11, 2018, less than 300 days before she filed at the EEOC. (*Id.* at #62). As to Miami's claim of sovereign immunity, Finley argued only that the state could have (and, in her view, should have) waived that immunity to "avoid the inconvenience of multiple fora." (*Id.* at #63).

### 1. **The Court's November 30, 2020, Opinion And Order.**

On November 30, 2020, the Court granted Miami's motion (Doc. 9) and dismissed Finley's First Amended Complaint in its entirety. (Op., Doc. 14, #73). As to the Title VII claims (the important ones for purposes of this Opinion), the Court concluded that Finley had failed to plausibly allege that the tenure denial on December 11, 2017, was "anything other than a final decision" or "'in any respect tentative,' other than that it might have been overturned on appeal." (*Id.* at #88) (internal citation omitted). The Court further concluded that the possibility of a successful appeal of the tenure decision did not affect the conclusion that the "alleged unlawful employment practice" occurred on December 11, 2017, the date on which

tenure was denied. Finley, however, did not file her EEOC charge until April 8, 2019. Because the 493 day-delay between these dates exceeded the 300-day limit prescribed by statute (*id.* at #84), the Court found her claims time barred.

The Court rejected, on both procedural and substantive grounds, Finley's argument that subsequent review by the Rights and Responsibilities Committee was "required" and that the tenure decision was not final until that Committee rendered its determination. (*Id.* at #89). The Court noted that Finley raised this argument only in her response (thereby waiving it) and further suggested that, even if considered, Finley had offered nothing in the way of factual allegations that would allow the Court to credit such an argument. (*Id.*).

Finally, the Court observed that Finley had apparently abandoned her argument that Miami committed "a new act of discrimination" each time it denied one of her appeals. (*Id.* at #90). But even apart from her abandoning that argument, the Court voiced its doubt about the viability of that alternative theory, given that Finley failed to "identify how 'the manner in which' she was treated [during the appeal process] 'differed discriminatorily from the manner in which'" Miami treated other similarly situated individuals. (*Id.*).

Importantly, however, the Court dismissed Finley's Title VII claims in her First Amended Complaint without prejudice. In doing so, the Court specifically invited Finley to file a second amended complaint interposing new factual allegations, if she could, that would allow the Court to conclude either (1) that the December 11,

7

2017, decision denying tenure was not a "final decision," or (2) that "Miami made some later decision in a discriminatory manner." (*Id.* at #91).

Finley accepted the Court's invitation and timely filed a Second Amended Complaint ("SAC") (Doc. 15) re-asserting only the Title VII claims. Miami moved to dismiss two weeks later, arguing that Finley had again failed to nudge her claims into the realm of plausibility, and asking the Court to dismiss the SAC in its entirety. ("Mot. to Dismiss SAC") (Doc. 16). The matter is now fully briefed and before the Court.

## LEGAL STANDARD

Miami moves to dismiss all of Finley's Title VII claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. It is well-settled that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). So, to survive a Rule 12(b)(6) motion, a complaint must "raise a right to relief above the speculative level" into the "realm of plausible liability." *Twombly*, 550 U.S. at 545, 547 n.5.

In assessing plausibility, the Court must construe the factual allegations in the complaint in the light most favorable to the plaintiff, accept the well-pled allegations as true, and draw all reasonable inferences in the plaintiff's favor.

8

*Wilburn v. United States*, 616 F. App'x 848, 852 (6th Cir. 2015). But a pleading must offer more than mere "labels and conclusions," because "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Nor is a court required to accept "[c]onclusory allegations or legal conclusions masquerading as factual allegations." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). Thus, the Court distinguishes between "well-pled factual allegations," which the Court must accept as true, and "naked assertions," which the Court need not accept as true. *See Iqbal*, 556 U.S. at 628 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (alteration and quotation omitted); *see also, e.g.*, *Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 375 (6th Cir. 2011) (finding that because some of the plaintiff's factual allegations were "not well-pleaded," "their conclusory nature 'disentitles them to the presumption of truth'") (quoting *Iqbal*, 556 U.S. at 681).

In the discrimination context, a plaintiff is not required to prove a prima facie case to survive a motion to dismiss. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (noting the Supreme Court "has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss"). This does not mean, however, that the pleading rules in discrimination cases are any less stringent than pleading standards for other federal causes of action. *See Smith v. Wrigley Mfg. Co.*, LLC, 749 F. App'x 446, 449 (6th Cir. 2018) (noting *Swierkiewicz*

9

"offers no gateway for a plaintiff to side-step the 'plausibility' standard laid out in *Twombly* and *Iqbal*"). While a plaintiff need not establish a prima facie case at the pleading stage, the elements of a prima facie case are nonetheless aspects to consider when determining the plausibility of a discrimination claim. *See, e.g.*, *Towns v. Memphis/Shelby Cnty. Health Dep't.*, No. 17-cv-02626, 2019 WL 639050, at *4 (W.D. Tenn. Jan. 25, 2019), report and recommendation adopted, 2019 WL 639025 (W.D. Tenn. Feb. 14, 2019) ("While a Title VII plaintiff need not establish a prima facie case at the motion to dismiss stage, courts have looked to the prima facie requirements when determining whether a Title VII plaintiff has pleaded an actionable claim."); *White v. Adena Health Sys.*, No. 2:17-cv-593, 2018 WL 3377087, at *4 (S.D. Ohio July 11, 2018) (discussing the prima facie elements in the context of a motion to dismiss several Title VII claims).

Ultimately, "the ordinary rules for assessing the sufficiency of a complaint apply," *Swierkiewicz*, 534 U.S. at 511, which means that a court must determine plausibility by employing its "judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## LAW AND ANALYIS

In her Second Amended Complaint, Finley again argues that Miami, in the process of denying Finley tenure, unlawfully discriminated against her because of her race, gender, and national origin. (*See* SAC, Doc. 15, #103–04). And, again, Miami does not attempt to challenge the merits of Finley's claims; instead, it reiterates the previously successful argument that Finley failed to timely file her charge with the

EEOC, and that she is thus precluded from pursuing her claims in this Court. (Mot. to Dismiss SAC, Doc. 16, #108). Once again, the Court agrees.

### A. Finley's Title VII Claims Remain Time Barred.

In its November 30, 2020, Opinion and Order, the Court explained that Title VII requires plaintiffs in "deferral state[s]," like Ohio, to file a discrimination charge with the EEOC within 300 days of the "alleged unlawful employment practice." *Amini v. Oberlin Coll.*, 259 F.3d 493, 498 (6th Cir. 2001) (citing *Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 407 (6th Cir. 1999) and 42 U.S.C. § 2000e-5(e)(1)). A plaintiff's failure to comply with this 300-day limitation precludes him or her from pursuing those claims. *See id.* (quoting *Alexander,* 177 F.3d at 407).

In its Opinion dismissing the FAC, the Court concluded that Finley had failed to allege that the "unlawful employment practice" was anything other than the December 11, 2017, tenure decision. Thus, her claims predicated on that decision were time barred. But the Court offered Finley two avenues she might take to successfully cure the pleading shortcomings—either by alleging (1) that "Miami's December 11, 2017 decision denying her tenure was not a 'final decision,' such that some later decision constituted the triggering event" or (2) "that Miami made some later decision in a discriminatory manner that can serve as the basis for her Title VII claim." (Op., Doc. 14, #91). At the same time, however, the Court cautioned that to survive dismissal, any renewed allegations "must be *plausible*," in that the Complaint must "identify some fact[s]." (*Id.*).

11

In her Second Amended Complaint, Finley endeavors to pursue both avenues the Court identified. That is, she first attempts to cast the tenure decision of December, 11, 2017—which was rendered after her one-year extension—as a "preliminar[y] deni[al]," pointing to provisions of the Miami "policy manual" and "Miami University Handbook" that she says bear out such a characterization. (SAC, Doc. 15, #101, 102). Second, she cites to each of the subsequent decisions, namely (1) the R&R Committee's June 11, 2018 decision; (2) the Office of Equity and Equal Opportunity's November 21, 2018 decision; (3) the President's Office's "foreclosure" of Finley's "right" to appeal to the Miami Board; and (4) the Vice President of Institutional Diversity and Inclusion's February 1, 2019 denial of Finley's appeal, and insists that each constituted "a new act of discrimination." (*Id.* at ¶¶ 17, 21–23, #102–03). None of Finley's new allegations, however, manage to overcome the legal deficiencies described in the Court's November 30, 2020, Opinion and Order (Doc. 14).

  **1.**  **Finley Fails To Plausibly Allege That The December 11, 2017, Decision Was Not A "Final" Decision.**

First, Finley seeks to establish that the December 11, 2017, decision denying her tenure was merely "preliminar[y]." She alleges that Miami has "two procedures that apply … before the denial of promotion is final," (*id.* at #101): a hearing before the R&R Committee, and a hearing before the Miami Office of Equity and Equal Opportunity, (*id.* at #101–02). As evidence of this lack of finality, she points to the fact that other candidates have "obtained promotion and tenure" by way of these procedures (presumably after having been denied in the first instance). (*Id.*). Her

allegations regarding these procedures, however, fail to demonstrate that the initial decision was anything other than final.

To Finley's credit, she interposes some new factual content in her most recent Complaint, mainly pertaining to the nature of these review procedures. But, nevertheless, they remain exactly that: *review* procedures. First, Finley stresses that the R&R Committee is a body "completely separate" from the tenure Committee, and that it assesses only the possibility of "procedural error" in the tenure decision, rather than making any merits determination. (*Id.*). But Finley fails to articulate, either in the SAC or in her Opposition, how these facts (even if true) have any bearing on the "finality" of the original tenure decision. Indeed, in the Court's view, these facts counsel, if anything, in the opposite direction. That is, a narrow, procedural review by an entirely separate body seems the essence of an "appeal" or a "collateral attack," rather than a necessary continuation of the process of finalizing a tenure decision. And the Supreme Court made clear in *Delaware State College v. Ricks* that "the pendency of a grievance, *or some other method of collateral review* of an employment decision, does not toll the running of the limitations periods." 449 U.S. 250, 261 (1980) (citing *Electrical Workers v. Robbins & Myers, Inc.*, 429 U.S. 229 (1976)) (emphasis added).[5]

---

[5] In her Opposition (Doc. 17), Finley attempts to distinguish her situation from the plaintiff's in *Ricks* by arguing that the R&R Committee "solicited and received additional evidence," rather than reviewing only a cold record. (*Id.* at 115). This, she says, makes clear that its decision constituted a "final determination" of her tenure decision, as opposed to an "appeal" of that decision. (*Id.*). That argument has two problems, though. First, the SAC contains no allegations to that effect. Second, even if that fact was properly alleged, it cannot overcome

13

Neither does Finley's initiation of an investigation at the Miami Office of Equity and Equal Opportunity provide a basis for concluding that the earlier decision was "preliminary."[6] Finley likens this Office to the EEOC, indicating that it undertook "its own investigation" of the decision, but erroneously rendered a "decision of no discrimination." (SAC, Doc. 15, #102). Again, these allegations seem to reinforce, rather than dispel, the notion that the tenure committee's decision was final. Perhaps most importantly, Finley refers to the Office's action as an "investigation," which alone strongly suggests it was an ex-post review rather than a necessary or required part of the original tenure-decision process.

In a commendable effort to plead with more particularity, Finley also cites the provisions of the Miami "policy manual" and "Miami University Handbook" that purportedly establish her right to these remedial procedures. (*Id.* at #101, 102). The Court may, in part, have prompted this addition by suggesting in its previous Opinion that Finley could seek to cure the pleading deficiencies in her Complaint by citing, for example, "a faculty manual provision, [or] a university rule." (Op., Doc. 14, #91). But, while heeding the Court's suggestion as to form, Finley's new allegations miss the point as to substance. The mere fact that the written Miami University Rules

---

Finley's seemingly contradictory allegations that the R&R decision was no more than a narrow, procedural review of the tenure decision. (*See* SAC, Doc. 15, #101).

[6] In her Opposition (Doc. 17), Finley does not appear to argue that the Office of Equity and Equal Opportunity determination should count as the "triggering event" for limitations purposes, instead maintaining that the decision of the R&R Committee finalized the discriminatory action. (*Id.* at #114). This stands in some tension with the SAC, which alleges that "Miami has *two* procedures that apply in this case before the denial of promotion is final," and seemingly names the Office of Equity and Equal Opportunity investigation as the second such procedure. (*See* SAC, Doc. 15, ¶¶ 17, 19, #101, 102).

provide these procedures for redress does not "suggest[] that tenure decisions are not 'final' until the completion of some particular event in the university review process." (*Id.*). And, although the Court evaluates the Complaint by what it contains, rather than what it *might* contain, the Court shares Miami's sense that if a relevant provision of the Handbook clearly established the tentative nature of tenure denials, Finley would have included it, (*see* Reply, Doc. 18, #118), especially given the Court's clear directions on that front in its earlier decision.

In sum, Finley has offered no factual allegations that render plausible her argument that the December 11, 2017, tenure denial was only tentative. And merely appending the word "preliminarily" to the phrase "denied promotion and tenure," (SAC, Doc. 15, #101), does not suffice. *See Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks and alterations omitted). As such, Finley's Title VII claims stemming from her denial of tenure are time barred.

> **2. Finley Has Failed To Plausibly Allege That Any Of The Subsequent Decisions Constitute Independent Discriminatory Acts.**

As indicated in the Court's previous Opinion, however, Finley might still have a timely claim if she can plausibly allege that one of the *later* decisions constituted a new act of discrimination, such that it provided a new limitations period as to that later discriminatory action. (Op., Doc. 14, #90); *see also Ricks*, 449 U.S. at 257–58. According to *Ricks*, however, "for the limitations periods to commence" with the date

15

of one of the later decisions, Finley would have to allege that such decision was made in a way that "differed discriminatorily from the manner in which" Miami treated others in the same situation. *Ricks*, 449 U.S. at 258. That is, Finley must meet the normal pleading standard for a discrimination claim with respect to at least one of the subsequent decisions. She has failed to do so.

Finley asserts in conclusory fashion that each subsequent review and appeal decision constituted "a new act of discrimination." (*Id.* at ¶¶ 17, 21–23, #101–03). But, again, she fails to flesh out that characterization with sufficient factual content. The closest she comes to plausibly alleging a distinct discriminatory decision within the 300 days prior to filing her EEOC charge relates to the R&R Committee's June 11, 2018, decision. Finley alleges that decision, which found Finley's tenure denial "clear of procedural error" constituted discrimination because (1) the Committee was made up "largely of white men, white women, and only one African American female, who did not attend any hearings," and (2) the Committee had, in the past, reversed the denial of white applicants based on inequitable treatment and procedural error. (*Id.* at #102).

These allegations, however, fall short of stating a plausible claim for "racial and gender discrimination." (*Id.*). Importantly, as Miami points out, Finley has failed to identify the precise procedural error she contends warranted reversal. (Reply, Doc. 18, #119). In the absence of such an allegation, the Court presumes she means to argue that the discriminatory nature of the original denial is the procedural defect on which grounds the R&R Committee should have reversed. But the failure to

16

remedy a previous instance of discrimination is not, in and of itself, a new and unique act of discrimination. *Lever v. Northwestern Univ.*, 979 F.2d 552, 556 (7th Cir. 1992); *see also Ricks*, 449 U.S. at 261. Rather, Finley would need to point to some way the R&R Committee's decision constituted a *fresh* act of discrimination, apart from the fact that it upheld the previous allegedly discriminatory one. Finley has not done so.

Even assuming Finley could identify some procedural defect warranting the R&R Committee's reversal, her claim still would likely fail. Finley asks the Court to infer that she suffered discrimination because her race and gender were underrepresented on the R&R Committee and because the Committee had formerly found in favor of white applicants. But the "Court is not required to accept inferences drawn by Plaintiff if those inferences are unsupported by the facts alleged in the complaint." *Sam Han v. Univ. of Dayton*, 541 F. App'x 622, 627 (6th Cir. 2013) (citing *Keys v. Humana*, 684 F.3d 605, 610 (6th Cir. 2012) and *Iqbal*, 556 U.S. at 678). And the Court finds Finley's desired inference unsupported, particularly where she has offered no specifics about these other applicants—other than, of course, that they were white. If, say, the R&R Committee had previously granted reversals to white applicants under closely similar circumstances—e.g., based on the same procedural defect identified by Finley—that may suffice to plausibly allege that the Committee discriminated based on Finley's race. *See Turner v. United Parcel Serv., Inc.*, No. 3:19-CV-00476, 2019 WL 5190992, at *4 (M.D. Tenn. Oct. 15, 2019) ("[T]he need to establish a 'plausible inference of discrimination' will typically require at least some degree of detail regarding any comparator employees on which a plaintiff relies ….")

17

(internal citation omitted). But, here, Finley fails to allege that she was similarly situated to the candidates who succeeded on appeal.

Finley's attempts to allege independent acts of discrimination with respect to the other remaining decisions likewise fall short. She raises three—the Office of Equity and Equal Opportunity's November 21, 2018, decision, the President's Office's "foreclosure" of Finley's "right" to appeal to the Miami Board, and the Vice President of Institutional Diversity and Inclusion's February 1, 2019, denial of Finley's appeal. But as to each, Finley merely states without elaboration that the decision constituted a new act of discrimination. She provides no facts in support of that conclusion, at all, let alone any facts that give rise to a plausible inference that discrimination actually occurred in connection with those decisions.[7] As such, the reasons articulated above apply even more forcefully to these even more conclusory allegations.

In sum, Finley has failed to plausibly allege that any of the decisions occurring after her original tenure denial constituted an independent act of discrimination and, thus, none of those decisions can form the basis of her Title VII claims. And because the December 11, 2017, tenure denial occurred more than 300 days before Finely filed her EEOC charge, her claims are time barred.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Miami's Motion to Dismiss (Doc. 16) and accordingly **DISMISSES** Finley's Second Amended Complaint (Doc. 15)

---

[7] As to the Office of Equity and Equal Opportunity's investigation, Finley does allege that a Miami employee "changed" Finley's "appeal documents," but Finley provides no indication of what these changes were, how the changes were motivated by her race or gender, or how the changes "[led] to the erroneous decision." (*See* SAC, Doc. 15, #102).

18

**WITH PREJUDICE**. The Court further **DIRECTS** the Clerk to enter judgment and

**TERMINATE** the case on the Court's docket.

    **SO ORDERED.**

February 1, 2022
**DATE**                                           **DOUGLAS R. COLE**
                                                    **UNITED STATES DISTRICT JUDGE**